Richard I. Arshonsky, Esq. [SBN 155624]
rarshonsky@lakklawyers.com
**LEVINSON ARSHONSKY KURTZ & KOMSKY, LLP**
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Telephone: (818) 382-3434
Facsimile: (818) 382-3433

- and -

Jeffrey Chubak (pro hac vice to be submitted)
jchubak@aminillc.com
AMINI LLC
131 West 35th Street
12th Floor
New York, NY 10001
Tel: (212) 490-4700
Fax: (212) 497-8222

Attorneys for Petitioners

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 507 SUMMIT LLC and KOA CAPITAL L.P., <br><br> Petitioners, <br><br> For an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery from ROTH CAPITAL PARTNERS, LLC for use in a Foreign Proceeding. | CASE NO. 8:23-mc-00018 <br><br> Assigned to Hon. <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR JUDICIAL ASSISTANCE** |

Petitioners 507 Summit LLC and KOA Capital L.P. (together, "Petitioners") submit this memorandum of points and authorities in support of their application to take discovery of Respondent Roth Capital Partners, LLC ("Respondent"), pursuant to 28 U.S.C. § 1782, for use in an appraisal proceeding brought under Section 238 of the Cayman Islands Companies Act and pending in the Grand Court of the Cayman Islands ("Cayman Court"), to determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH").

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... II

BACKGROUND ..................................................................................................... 1

I. THE RELEVANT PARTIES ....................................................................... 1
    A. CIH; Fang; Mr. Mo ........................................................................... 1
    B. Petitioners ......................................................................................... 3
    C. Special Committee; Respondent ...................................................... 3

III. THE MERGER ............................................................................................. 3

IV. THE APPRAISAL PROCEEDING .............................................................. 5

V. THE DISCOVERY SOUGHT FROM RESPONDENT ............................... 6

ARGUMENT ........................................................................................................... 7

I. THE STATUTORY REQUIREMENTS ARE SATISFIED ......................... 7
    A. Respondent is Found Within this District ........................................ 7
    B. The Discovery Sought is "For Use" in a Foreign Proceeding ............. 8
    C. Petitioners are "Interested Persons" .................................................. 8

II. THE DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF PERMITTING DISCOVERY ....................................................................... 9
    A. Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad" ...................................... 9
    B. "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" ............................................................................. 9
    C. Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" ....................................................................... 10
    D. Whether the request is "unduly intrusive or burdensome" ............. 10

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Del Valle Ruiz*,
　939 F.3d 520 (2d Cir. 2019) ................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　542 U.S. 241 (2004) ...............................................................................7, 8, 9

*Shueisha Inc. v. Paypal Holdings Inc.*,
　No. 22-mc-80273, 2023 WL 2277102 (N.D. Cal. Feb. 27, 2023) ...................7, 8

*Qualcomm Inc., Applicant for an order Pursuant to 28 U.S.C. § 1782*,
　No. 18-mc-80134, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018) ......................8

*In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*,
　No. 18-mc-37, 2018 WL 2146412 (C.D. Cal. May 9, 2018) .............................8

*In re Alpine Partners, (BVI) L.P.*,
　No. 22-mc-80123, 2022 WL 18956960 (N.D. Cal. Oct. 18, 2022) ....................9

*In re Kingstown Partners Master ltd.*,
　No. 21-mc-691, 2022 WL 1081333 (S.D.N.Y. April 8, 2022) ...........................9

*In re Platinum Partners Value Arbitrage Fund L.P.*,
　583 B.R. 803 (Bankr. S.D.N.Y. 2018) ................................................................9

*In re Application of Savan Magic Ltd.*,
　No. 17-mc-1689, 2017 WL 6454240 (D. Nev. Dec. 18, 2017) ........................10

*Lufthansa Technik v. Panasonic Avionics Corp.*,
　No. 17-mc-1453, 2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) .................10

*In re Mut. Assistance of Local Court of Wetzlar, Germany*,
　No. 17-mc-78, 2018 WL 2183966 (E.D. Cal. May 11, 2018) ..........................10

*In re Application of Joint Stock of Raiffeinsenbank*,
　No. 16-mc-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ...............10, 11

*In re Republic of Ecuador*,
　No. 10-mc-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ...................11

LEVINSON ARSHONSKY KURTZ & KOMSKY, LLP

*Euromepa, S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095 (2d Cir. 1995) .............................................................................. 11

*In re Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
 No. 21-mc-153, 2021 WL 1611673 (E.D. Mo. April 26, 2021) ........................ 11

**Statutes and Rules**

28 U.S.C. § 1782 ................................................................................ 6, 7, 8, 9, 10, 11

# BACKGROUND

## I. THE RELEVANT PARTIES

### A. CIH; Fang; Mr. Mo

CIH is a Cayman Islands exempted company with limited liability, that was spun-off of Fang Holdings Limited ("Fang"), also a Cayman Islands exempted company with limited liability, on June 11, 2019, via dividend distribution of all of CIH's shares to Fang shareholders. (Fang Form 20-F filed 5/27/20 at 39; CIH Form 20-F filed 4/26/22 at 51.[1])

According to its 2021 annual report (CIH Form 20-F filed 4/26/22 at 50-51), CIH was originally incorporated as Selovo Investments Limited under the laws of the British Virgin Islands in 2007 as a wholly owned subsidiary of Fang. In 2018 the company re-domiciled to the Cayman Islands and changed its name to China Index Holdings Limited. In 2019 CIH and Fang separated in the above-described spin-off. Following the spin-off, Fang retained its business operating a real estate internet portal focusing primarily on serving the residential real property sector, while CIH provided real estate data and analytics tools under the information services segment in addition to promotion services and listing services under the marketplace services segment.

While Fang and CIH shares traded separately as a result of the spin-off, the two businesses remained intertwined:

(1) Post-spin-off, the two entities continued to share revenue and operating responsibilities under a Business Cooperation Agreement. (CIH Form F-1/A filed 5/24/19 Exhibit 10.4.)

(2) The two entities have balance sheet assets or liabilities owed to the other. For example, and as described below, Fang has an outstanding legal obligation to

---

[1] For ease of reference, all SEC filings are hyperlinked, and all hyperlinked documents are annexed as exhibits to the accompanying Arshonsky Declaration in support.

repay a $84 million loan to CIH; and conversely, CIH has a claim against Fang for the same amount (CIH Form 6-K filed 9/28/21, Exhibit 99.7).

(3) The two entities share or have shared common board members and Management. Richard Jiangong Dai, the nephew (Fang Form 20-F filed 5/27/20 at 22) of Fang's and CIH's controlling shareholder Mr. Vincent Tianquan Mo, is the Chairman of the Boards of both CIH and Fang. (Arshonsky Decl. Exhibits 4-5.) Mr. Dai has a history of management responsibilities at Fang including Fang's president and CEO from 1999 to 2014 and Fang's director from September 2010 to February 2016. (CIH form 20-F Filed 4/26/22 at 87.) Mr. Mo was previously the Chairman of both boards. (Fang Form 6-K filed 6/13/19, Exhibit 99.1.) Yu Huang, the "Director, CEO and President" of CIH, is also an "independent director" of Fang. (See also Arshonsky Decl. Exhibit 7 (Judgment) ¶27 (discussing additional overlap).)

(4) Fang owns shares of CIH and has significant voting power over CIH. As of February 24, 2023, Fang owned 6,964,415 Class A ordinary shares entitled to one vote per share and 11,119,686 Class B ordinary Shares entitled to ten votes per share. (CIH Schedule 13E-3/A filed 2/24/23 at 87.) Fang had beneficial ownership of 20% and voting control of 39% as of February 24, 2023. (Id. at 87-88.) At all relevant times Mr. Mo controlled in excess of 50% of the voting power of each company.[2]

---

[2] Fang disclosed in its 2019 (last-filed) annual report, that 88.7% of its Class B ordinary shares were owned by Media Partner Technology Limited and Next Decade Investments Limited. (Fang Form 20-F filed 5/27/20 at 24.) Both of those entities are controlled by Mr. Mo. (CIH Schedule 13E-3/A filed 2/24/23 at 3-4.) Together with Class A ordinary shares owned by Mr. Mo and his affiliates, he exercised approximately 71.7% of voting power under the dual-class share structure. (Fang Form 20-F filed 5/27/20 at 24, 91.) In addition, as of March 31, 2022, Mr. Mo "beneficially owned approximately 27.2% of [CIH's] total ordinary shares and approximately 62.2% of the voting power of our outstanding shares. Therefore, [he] has decisive influence over matters requiring shareholders' approval, including election of directors and significant corporate transactions, such as a merger." (CIH Form 20-F filed 4/26/22 at 50.)

LEVINSON ARSHONSKY KURTZ & KOMSKY, LLP

### B. Petitioners

Petitioners were beneficial owners of ADS[3] of CIH that have been converted to Class A ordinary shares. (Arshonsky Decl. Exhibit 7 (Judgment) ¶¶2, 4, 24, 45-46, 86.g; Cecere Decl. Exhibit 1 (Petition in appraisal proceeding) at 5.) Petitioners have dissented from the below-described merger. (Id. ¶¶11, 13, and at 5.)

### C. Special Committee; Respondent

On August 23, 2022, Fang submitted a preliminary, non-binding proposal to CIH's board, to acquire all shares not already controlled by the buy-out consortium in a going-private transaction for $.84 per ADS (later increased to $1 per ADS) paid in cash. (CIH Schedule 13E-3/A filed 2/24/23 at 30.)

On August 31, 2022, the board passed a resolution establishing a two-member special committee to evaluate the proposal. (Id.)

On or about September 6, 2022, the special committee engaged Gibson Dunn LLP as counsel and Respondent as financial advisor, "to assist the Special Committee in evaluating and negotiating the Proposed Transaction or any alternative transaction". (Id. at 31-32.)

## II. THE MERGER

As described above, on August 31, 2022, CIH's board established a special committee to evaluate Fang's proposal to take CIH private for $.84 per share or per ADS. (CIH Schedule 13E-3/A filed 2/24/23 at 30.)

On October 12, 2022, Mr. Mo and certain of his affiliates including Fang, Digital Link Investments Limited and General Atlantic,[4] entered into a "Consortium

---

[3] Both companies' Class A ordinary shares were/are not directly traded. Instead, a class of securities called American Depository Shares ("ADS") exist to represent the underlying Class A ordinary shares which are held by a third-party custodian known as a depositary.

[4] General Atlantic Singapore Fund Pte. Ltd. had previously made a take-private proposal that provided for merger consideration of $2.32 per share or ADS not already owned by it. (CIH Schedule 13E-3/A filed 2/24/23 at 29.) The board did not engage with respect to that proposal,

LEVINSON ARSHONSKY KURTZ & KOMSKY, LLP

Agreement" in relation to the then-contemplated merger transaction. (Id. at 31-32.) On October 13, 2022, the consortium members submitted a nonbinding proposal to buy all outstanding Class A and Class B ordinary shares of CIH, including those represented by ADSs, not beneficially owned by the consortium members in a going-private transaction. (Id.) On November 25, 2022, Evenstar joined the consortium. (Id. at 34.)

Following negotiations, the consortium "increase[d] the purchase price to US$1.00 per Share or ADS" and indicated that was its "best and final offer". (Id. at 35-36.)

"On December 22, 2022, Roth Capital orally rendered to the Special Committee its opinion (which was subsequently confirmed in writing by delivery on the same date of Roth Capital's written opinion addressed to the Special Committee) as to the fairness, from a financial point of view, of the Per Share Merger Consideration to be received by the holders of the Shares (other than the Excluded Shares [i.e. shares held by the consortium] and Dissenting Shares) and the Per ADS Merger Consideration to be received by the holders of ADS (other than ADS representing the Excluded Shares) pursuant to the Merger Agreement and the Plan of Merger." (Id. at 23.)

The special committee approved the transaction on the basis of "Roth Capital's presentation of its financial analyses and its opinion." (CIH Schedule 13E-3/A filed 2/24/23 at 36.)

"Following the meeting of the Special Committee, the Board convened, and based upon the unanimous recommendation of the Special Committee … the Board" approved the merger. (Id. at 36-37.)

---

because it was not supported by Mr. Mo. (Id.) After the subsequent Fang proposal was publicly disclosed, General Atlantic re-engaged with Fang (id. at 30) and joined the consortium that Fang led.

The merger documents were executed on the same day the special committee and board approved the same. (Id. at 37.) The documents included an "Equity Commitment Letter" under which the Sponsor (defined as Fang) "or its Affiliates named therein" agreed to provide the financing needed to consummate the merger. (CIH Form 6-K filed 12/22/22 Exhibit 99.2 (Agreement and Plan of Merger) § 5.12(a).) In its Fairness Opinion (at 5), Roth Capital estimated the required financing to be $15 million. Roth Capital stated it believed Fang to be a creditworthy sponsor, in that it "has in excess of $50 million on its balance sheet." The statement that Fang has in excess of $50 million of cash, while consistent with Fang's December 31, 2020 balance sheet, gives an understated impression of Fang's likely liquid resources. As of December 31, 2020, Fang had cash of $409 million and cash equivalents (short term investments) of $91.6 million. The December 31, 2020 financial statements (Fang Form 6-K filed 3/29/21) were the last financial disclosure by Fang filed with the SEC.

The merger was consummated April 17, 2023. (CIH Form 6-K filed 4/17/23, Exhibit 99.1.)

## III. THE APPRAISAL PROCEEDING

Under Companies Law § 238, the Cayman Court in the appraisal proceeding will be under a statutory obligation to decide the fair value of dissenting shareholders' shares. The parties to the appraisal proceeding—Petitioners as dissenting shareholders and CIH—will submit evidence, expert testimony and briefs to the Cayman Court which will weigh the evidence and decide on the fair value of Petitioners' shares.

In assessing fair value in a Cayman appraisal proceeding, the Cayman Court will examine the fairness of the process that led to board approval of the merger. In doing so, the Cayman Court will consider the fairness of the merger to CIH's minority stockholders and will likely focus on inter alia objective valuations of the company and the process by which the special committee and/or board concluded that the merger price was appropriate.

CIH commenced the appraisal proceeding on July 19, 2023. (Cecere Decl. Exhibit 1.)

There is no automatic discovery in proceedings under Companies Law § 238, similar to pretrial discovery in federal and state court actions here. Instead, under Grand Court Rules, Order 24, Rule 3, the Cayman Court may order any party to provide discovery of "documents which are in their possession, custody or power relating to any matter in question between them in the action." (Cecere Decl. ¶9.) The Cayman Court, however, has no power to order nonparties outside of the court's jurisdiction to produce evidence. (Id. ¶17.) Because Respondent is outside the Cayman Court's jurisdiction, it will not have power to order Respondent to provide evidence in the appraisal proceeding. Nevertheless, the Cayman Court has affirmatively held that § 1782 can be used to gather discovery in connection with appraisal proceedings before said court. *E.g. Lyxor Asset Mgm't S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553 (Cecere Decl. Exhibit 8); *In re Nord Anglia Education, Inc.* (Unreported, March 17, 2020) (id. Exhibit 9).

## IV.   THE DISCOVERY SOUGHT FROM RESPONDENT

Significant questions exist concerning whether Respondent backed into the $1 valuation per share valuation at the request of another as opposed to reaching that conclusion independently.

Petitioners accordingly seek leave to serve a document subpoena requesting production of (1) all documents Respondent reviewed, received or relied upon in connection with the Fairness Opinion; (2) all communications concerning CIH or Fang during the four-month period it was engaged including those concerning CIH's or Fang's financial condition, the merger or the merger consideration; (3) financial statements of CIH and Fang; (4) Respondent's time records in relation to its engagement; and (5) documents concerning Respondent's pursuit or consideration of alternative transactions to the merger. Petitioners also seek leave to depose Respondent concerning the foregoing.

6

# ARGUMENT

Under § 1782, District Courts may authorize discovery for use in a pending foreign proceeding or a foreign proceeding that is within reasonable contemplation. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004).

An application under the statute must satisfy three requirements: (1) the discovery is sought from someone who resides or is found within the district; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *Id*. at 241.

If these statutory requirements are met, the following discretionary factors are considered: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65. In considering these factors, the Court is required to keep in mind "the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Id*. at 252.

As detailed below, Petitioners satisfy each of the three statutory requirements, and each of the *Intel* factors weighs heavily in favor of granting the instant application.

## I. THE STATUTORY REQUIREMENTS ARE SATISFIED

### A. Respondent is Found Within this District

Whether a person or entity is "found" in a district for § 1782 purposes is coextensive with whether a district court has general personal jurisdiction over that person or entity. *E.g. Shueisha Inc. v. Paypal Holdings Inc.*, No. 22-mc-80273, 2023

WL 2277102, at *3 (N.D. Cal. Feb. 27, 2023) (quoting *In re Del Valle Ruiz*, 939 F.3d 520, 523-24 (2d Cir. 2019)) ("While the Ninth Circuit has not interpreted this portion of the statute, the Second Circuit held 'resides or is found' extends to the limits of personal jurisdiction").

Respondent is found in this district. Its website states that its "Corporate Headquarters" is in Newport Beach, and its "Statement of Information" filed with the California Secretary of State states that its "principal address" is in Newport Beach. (Arshonsky Decl. Exhibits 2-3.)

### B. The Discovery Sought is "For Use" in a Foreign Proceeding

"Courts in the Ninth Circuit have observed that the 'for use' requirement 'focuses on the practical ability of an applicant to place a beneficial document … before a foreign tribunal.'" *Qualcomm Inc., Applicant for an order Pursuant to 28 U.S.C. § 1782*, No. 18-mc-80134, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018) (quoting *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. 18-mc-37, 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018)).

Cayman courts have held civil litigants can make use of evidence obtained under § 1782 in Cayman Islands civil proceedings, including in appraisal proceedings. Indeed, there are many examples of § 1782 evidence being used. (Cecere Decl. ¶¶18-20.) Further, there are no restrictions under Cayman law limiting the ability of parties in the appraisal proceeding to submit relevant documentary or testimonial evidence obtained under § 1782. (Id. ¶¶21-26.)

### C. Petitioners are "Interested Persons"

Petitioners are party to the appraisal proceeding. There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.

## II. THE DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF PERMITTING DISCOVERY

Once the statutory requirements are met, district courts consider the four discretionary *Intel* factors (listed in bold in section headings below). 542 U.S. at 264-65.

### A. Whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"

Respondent is not a party to the appraisal proceeding (Cecere Decl. Exhibit 1), and thus it will not be subject to party discovery. Further, because Respondent resides in the United States, the Cayman Court will not have jurisdiction to compel discovery from it. (Id. ¶8.) Thus, although evidence from Respondent will significantly aid the fair resolution of the appraisal proceeding, Petitioners will not be able to gain access to its testimony or documents through the discovery process in the appraisal proceeding itself.

### B. "The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"

Multiple United States courts have recognized Cayman courts are receptive to evidence obtained via § 1782. *E.g. In re Alpine Partners, (BVI) L.P.*, No. 22-mc-80123, 2022 WL 18956960, at *6 (N.D. Cal. Oct. 18, 2022) (collecting cases, in § 1782 proceeding commenced to take discovery for use in appraisal proceeding, and noting Cayman Court receptivity is reflected by Directions Order which fixed a deadline for § 1782 discovery); *In re Kingstown Partners Master Ltd.*, No. 21-mc-691, 2022 WL 1081333, at *5 (S.D.N.Y. April 8, 2022) (collecting cases, in § 1782 proceeding commenced to take discovery for use in Cayman appraisal proceeding); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman

courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law").

### C. Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"

This factor looks primarily to whether the discovery sought seriously offends the public policy of the forum state or the United States and is satisfied unless the foreign court actively prohibits gathering the information sought. There is no prohibition on obtaining nonparty discovery in aid of appraisal proceedings under Section 238 or for use in other civil actions under Cayman law. *In re Application of Savan Magic Ltd.*, No. 17-mc-1689, 2017 WL 6454240, at *4 (D. Nev. Dec. 18, 2017); *Lufthansa Technik v. Panasonic Avionics Corp.*, No. 17-mc-1453, 2017 WL 6311356, at *4 (W.D. Wash. Dec. 11, 2017); *see also Lyxor Asset Mgm't S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553 (Cecere Decl. Exhibit 8), at ¶¶57-58.

Thus, the discovery sought does not seek to circumvent proof-gathering restrictions applicable in the appraisal proceeding. To the contrary, Cayman courts are receptive to foreign discovery.

### D. Whether the request is "unduly intrusive or burdensome"

As an initial matter, the party responding to § 1782 discovery is the one that must establish that such discovery presents an undue burden. *In re Mut. Assistance of Local Court of Wetzlar, Germany*, No. 17-mc-78, 2018 WL 2183966, at *4 (E.D. Cal. May 11, 2018).

The discovery sought is limited in scope to documents and information bearing on the value of Petitioners' Class A ordinary shares and the relevant period is limited in temporal scope. To the extent the Court believes any request is overbroad, granting the application will not preclude Respondent from moving to quash or modify the subpoena. *In re Application of Joint Stock of Raiffeinsenbank*, No. 16-mc-80203, 2016

WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016); *In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *5 (N.D. Cal. Sept. 15, 2010) ("the Court's ruling here does not preclude Mr. Borja … from contesting the subpoena based on undue intrusion or burden or based on other grounds (e.g., overbreadth)"). Moreover, if the Court finds any merit to such objection, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995). *See also In re Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 21-mc-153, 2021 WL 1611673, at *3 (E.D. Mo. April 26, 2021) ("rather than attempt to trim the [§ 1782] discovery requests sua sponte, the Court will order the parties to meet and confer in good faith and … narrow the scope of the discovery requests").

## **CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Court grant the application.

Dated: November 2, 2023

LEVINSON ARSHONSKY KURTZ & KOMSKY, LLP

By: */s/ Richard I. Arshonsky*
    Richard I. Arshonsky

AMINI LLC
Jeffrey Chubak *(pro hac vice to be submitted)*
131 West 35th Street, 12th Floor
New York, NY 10001
Tel: (212) 490-4700
Fax: (212) 497-8222
jchubak@aminillc.com
Attorneys for Petitioners